*Fee Exempt Per Gov. Code § 6103*

1  WOODRUFF & SMART, APC
   BRADLEY R. HOGIN – State Bar No. 140372
2  bhogin@woodruff.law
   RICIA R. HAGER – State Bar No. 234052
3  rhager@woodruff.law
   555 Anton Boulevard, Suite 1200
4  Costa Mesa, California 92626-7670
   Telephone:  (714) 558-7000
5  Facsimile:   (714) 835-7787

6  BAYRON GILCHRIST, General Counsel - State Bar No. 212393
   bgilchrist@aqmd.gov
7  BARBARA BAIRD, Chief Dep. Counsel - State Bar No. 81507
   bbaird@aqmd.gov
8  SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT
   21865 Copley Drive
9  Diamond Bar, CA 91765
   Telephone: (909) 396-3535
10 Facsimile: (909) 396-2961

11 Attorneys for Defendants SOUTH COAST AIR QUALITY
   MANAGEMENT DISTRICT, THE GOVERNING BOARD OF THE
12 SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT,

13                  UNITED STATES DISTRICT COURT

14                 CENTRAL DISTRICT OF CALIFORNIA

15                        WESTERN DIVISION

16 EAST YARD COMMUNITIES FOR          CASE NO: 2:23-cv-06682-JLS-SK
   ENVIRONMENTAL JUSTICE,
17 PEOPLE'S COLLECTIVE FOR            ASSIGNED FOR ALL PURPOSES TO
   ENVIRONMENTAL JUSTICE,             THE HONORABLE JOSEPHINE L.
18 COMMUNITIES FOR A BETTER           STATON
   ENVIRONMENT, and SIERRA CLUB,
19                                    **NOTICE OF MOTION AND MOTION**
               Plaintiffs,            **TO DISMISS; MEMORANDUM OF**
20                                    **POINTS AND AUTHORITIES**
   v.
21                                    HEARING DATES PENDING:
   SOUTH COAST AIR QUALITY            Type:    Motion to Dismiss
22 MANAGEMENT DISTRICT, THE           Date:    December 8, 2023
   GOVERNING BOARD OF THE             Time:    10:30 a.m.
23 SOUTH COAST AIR QUALITY            Dept:    Courtroom 8A, 8th Floor
   MANAGEMENT DISTRICT,
24 CALIFORNIA AIR RESOURCES           DATE ACTION FILED: August 15, 2023
   BOARD, and DOES 1 through 25       TRIAL DATE:  None
25 inclusive,
               Defendants.
26

27

28

                              1

1794889.1

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on **December 8, 2023 at 10:30 a.m.**, in Courtroom 8A, 8th Floor of the Central District Court of California, Western Division, which is located at 350 West 1st St. Los Angeles, CA 90012, Defendants South Coast Air Quality Management District and the Governing Board of the South Coast Air Quality Management District (collectively "the Air District") will and hereby do move the Court for an order dismissing the complaint of Plaintiffs East Yard Communities For Environmental Justice, People's Collective For Environmental Justice, Communities For A Better Environment, and Sierra Club, in accordance with Federal Rules of Civil Procedure Rules 12(b)(1) and 12(b)(6).  The Motion will be made on the grounds that the Court does not have subject matter jurisdiction over the complaint, or, in the alternative, that the complaint fails to state a claim upon which relief can be granted, because Section 304(a)(1) does not authorize a lawsuit against an air quality regulator based on action or inaction taken in its capacity as a regulatory agency.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on October 6, 2023.

This Motion is based on this Notice of Motion and Motion, the corresponding Memorandum of Points and Authorities, the Request for Judicial Notice filed concurrently herewith, and the pleadings and papers on file in this action.

DATED:  October 13, 2023          WOODRUFF & SMART, APC


By: _____
    BRADLEY R. HOGIN
    RICIA R. HAGER
    Attorneys for Defendants SOUTH COAST
    AIR QUALITY MANAGEMENT
    DISTRICT, THE GOVERNING BOARD OF
    THE SOUTH COAST AIR QUALITY
    MANAGEMENT DISTRICT

1794889.1

# TABLE OF CONTENTS

**PAGE**

Introduction ...........................................................................................................8

I.   Regulatory and Factual Background ...............................................................9

    A.   The Clean Air Act's Regulatory Scheme................................................9

    B.   Requirements for Ozone Nonattainment Regions. ..............................11

    C.   Ozone Control in the South Coast Air Basin .......................................12

II.  Section 304(a)(1) Does Not Authorize Suits Against Regulators Acting in Their Regulatory Capacity -- it Only Allows Suits Against *Polluters* .........14

    A.   A Regulatory Failure to Revise a SIP is Not a "Violation" of the Act Within the Meaning of Section 304(a)(1). ....................................15

        1.   The Act Consistently and Exclusively Uses the Term "Violation" to Refer to Noncompliance by Polluters ...............17

        2.   Plaintiffs' Interpretation is Wholly Inconsistent with the Clean Air Act Sanctions Scheme...............................................21

        3.   Courts Have Followed *Bennett* and/or *Korleski* in Interpreting the Same Language in Other Citizen Suit Provisions.................................................................................22

    B.   Ninth Circuit Case Law Does Not Support Plaintiffs' Interpretation. .......................................................................................25

        1.   An Unexamined Assumption in a Decision Does Not Create a Precedent ..................................................................25

        2.   *San Francisco* is the Only Ninth Circuit Case that Considered the Issue Presented Here......................................27

Conclusion ..........................................................................................................28

WOODRUFF, & SMART
ATTORNEYS AT LAW
COSTA MESA

1

## <u>TABLE OF AUTHORITIES</u>

2                                                                           <u>PAGE</u>

3  **<u>FEDERAL CASES</u>**

4  *1000 Friends of Maryland v. Browner*, 265 F.3d 216 (4th Cir. 2001)........................11

5  *Am. Trucking Associations, Inc. v. E.P.A.*, 283 F.3d 355 (D.C. Cir. 2002) ................11

6  *Askins v. Ohio Dep't of Agriculture*, 809 F.3d 868 (6th Cir. 2016) ............................24

7  *Bayview Hunters Point Community Advocates v. Metropolitan*

8      *Transportation Commission*, 366 F.3d 692 (9th Cir. 2004) ..............................25, 27

9  *Bennett v. Spear*, 520 U.S. 154 (1997) ..................................................17,19, 20, 23, 25

10  *Benzman v. Whitman*, 523 F.3d 119 (2d Cir. 2008) ....................................................24

11  *Brecht v. Abrahamson*, 507 U.S. 619 (1993)................................................................26

12  *Chapman v. California,* 386 U.S. 18 (1967) ................................................................26

13  *City and County of San Francisco v US Dept of Transportation*,

14      796 F.3d 993 (9th Cir. 2015)......................................................................................23

15  *City of Fairborn, Ohio v. EPA* (S.D. Ohio, Mar. 13, 2023, No. 3:22-CV-102)

16      2023 WL 2478572.......................................................................................................17

17  *Committee for a Better Arvin v. EPA*, 786 F.3d 1169 (9th Cir. 2015) ..........................9

18  *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157 (2004) ..................................26

19  *Cross Timbers Concerned Citizens v. Saginaw*, 991 F. Supp. 563

20      (N.D. Tex. 1997) ........................................................................................................25

21  *El Comite Para el Bienestar de Earlimart v. U.S. E.P.A.*  786 F.3d 688

22      (9th Cir. 2015)............................................................................................................10

23  *Estate of Magnin v. Comm'r*, 184 F.3d 1074 (9th Cir. 1999).......................................27

24  *Gen. Motors Corp. v. United States*, 496 U.S. 530 (1990)............................................9

25  *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926 (9th Cir. 2007)..............................27

26  *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86 (1993) ...................................25, 26

27  *Kotteakos v. United States,* 328 U.S. 750 (1946) ........................................................26

28  *League to Save Lake Tahoe v. Trounday*, 598 F.2d 1164 (9th Cir. 1979) .............25, 27

WOODRUFF, & SMART
ATTORNEYS AT LAW
COSTA MESA

1794889.1

*Lewis v. Casey*, 518 U.S. 343 (1996)...............................................................................26

*Lum v. City & Cnty. of Honolulu*, 963 F.2d 1167 (9th Cir. 1992) ...............................26

*McCarthy* v. *Thomas*, 27 F.3d 1363 (9th Cir. 1994) ...........................................25, 27

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353 (1982)............15

*Middlesex Cnty., Sewerage Auth. v. Nat'l Sea Clammers Assn.*, 453 U.S. 1 (1981) ...15

*Montana Env't Info. Ctr. v. Thomas*, 902 F.3d 971 (9th Cir. 2018) .............................9

*Montana Sulphur & Chem. Co. v. E.P.A.*, 666 F.3d 1174 (9th Cir. 2012)..................11

*Nat. Res. Def. Council v. U.S. E.P.A.*, 779 F.3d 1119 (9th Cir. 2015)......................13

*Nat. Res. Def. Council v. E.P.A.*, 643 F.3d 311 (D.C. Cir. 2011) ..............................13

*New York v. United States*, 505 U.S. 144, 188 (1992)..................................................22

*Physicians Comm. for Responsible Medicine v. Johnson*, 436 F.3d
   326 (2d Cir. 2006) ........................................................................................................25

*Russello v. U.S.*, 464 U.S. 16 (1983) .............................................................................19

*Safe Air for Everyone v. E.P.A.*, 488 F. 3d 1088 (9th Cir. 2007) ...............................10

*Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285 (9th Cir.1985)......................27

*Sierra Club v. Env't Prot. Agency*, 21 F.4th 815 (D.C. Cir. 2021)..............................11

*Sierra Club v. Korleski*, 681 F.3d 342 (6th Cir. 2012).........................................passim

*Train v. Natural Res. Def. Council*, 421 U.S. 60 (1975) .............................................11

*U.S. v. LKAV*, 712 F.3d 436 (9th Cir.2013)..................................................................16

**STATE CASES**

*People v. Knoller*, 41 Cal.4th 139 (2007).....................................................................26

*People v. McKinnon*, 52 Cal.4th 610 (2011) ................................................................26

**FEDERAL STATUTES**

15 United States Code section 2619(a).............................................................................25

16 United States Code section 1540(a)..............................................................................21

16 United States Code section 1540(b) .............................................................................21

16 United States Code section 1540(e)(3).........................................................................21

16 United States Code section 1540(g)(1)(A) ...................................................................20

WOODRUFF, & SMART
ATTORNEYS AT LAW
COSTA MESA

1794889.1

42 United States Code section 7401 ........................................................9, 10

42 United States Code section 7407(d) .........................................................10

42 United States Code section 7409 ................................................................9

42 United States Code section 7410 ..............................................................10

42 United States Code section 7410(a)(1) .....................................................10

42 United States Code section 7410(a)(2) .....................................................10

42 United States Code section 7410(a)(2)(A) ................................................11

42 United States Code section 7413(a)(1)(A) ................................................22

42 United States Code section 7413(a)(1)(A)-(C) ..........................................18

42 United States Code section 7413(a)(2) .....................................................19

42 United States Code section 7413(b) ..........................................................17

42 United States Code section 7413(c)(1) ......................................................18

42 United States Code section 7501 ..............................................................10

42 United States Code section 7509 .........................................................18, 22

42 United States Code section 7509(a) ..........................................................22

42 United States Code sections 7501-7509a ..................................................10

42 United States Code section 7511(b)(4) ......................................................12

42 United States Code sections 7511-7511f ...................................................12

42 United States Code section 7511d .............................................................12

42 United States Code section 7604(a) ...........................................................25

42 United States Code section 7604(a)(1) ..................................................15, 16

42 United States Code section 7604(a)(1)(ii) ..................................................15

42 United States Code section 7604(a)(2) ..................................................15, 19

42 United States Code section 9659(a)(1) .......................................................24

49 United States Code section 60121 .............................................................23

**STATE STATUTES**

California Health & Safety Code section 40001 .............................................13

California Health & Safety Code section 40402 .............................................13

WOODRUFF, & SMART
ATTORNEYS AT LAW
COSTA MESA

1794889.1

California Health and Safety Code section 40408......................................................13

California Heath and Safety Code section 40412......................................................13

California Health and Safety Code section 40460......................................................13

**FEDERAL REGULATIONS**

40 Code of Federal Regulation Part 51......................................................10

40 Code of Federal Regulation section 50.1(l)......................................................10

40 Code of Federal Regulation section 50.1(e) ............................................................9

40 Code of Federal Regulation section 50.2......................................................10

40 Code of Federal Regulation section 51.112......................................................10, 11

40 Code of Ferderal Regulation section 51.114 ......................................................11

40 Code of Federal Regulation section 51.165(a)(1)(xxxvii)(C) ................................11

40 Code of Federal Regulation section 81.305......................................................13

**FEDERAL REGISTER**

59 Fed. Reg. 23264-01......................................................13

WOODRUFF, & SMART
ATTORNEYS AT LAW
COSTA MESA

1794889.1

## MEMORANDUM OF POINTS AND AUTHORITIES

### Introduction

This case should be dismissed because Section 304(a)(1) of the Clean Air Act (the "Act") does not authorize a citizen to challenge *regulatory action or inaction* by a state agency.  The Act gives the U.S. Environmental Protection Agency ("EPA") the exclusive authority to enforce the Act's requirements as against state regulatory agencies.  Section 304(a)(1) can only be used to sue *polluters* who "violate" an "emission standard of limitation" in effect under the Act.  This is clear from the language of Section 304(a)(1), the language of other sections in the Act, and the Act's overall structure.  There are two basic points to be made.

*First*, the Act's enforcement provisions consistently and exclusively use the term "violation" to refer to noncompliance by polluters.  Moreover, the Act *never* uses the term "violation" to refer to noncompliance by a state regulatory agency.  A state agency's failure to revise a State Implementation Plan ("SIP"), for example, is called a "deficiency" rather than a violation.  The intent of Congress is abundantly clear from its choice of words, both in Section 304(a)(1) and elsewhere in the Act: Section 304(a)(1) was only intended to allow citizen suits against polluters.

*Second*, Plaintiffs' interpretation of Section 304(a)(1) is inconsistent with the sanctions scheme and indeed the larger structure of the Act as an example of cooperative federalism.  The Act, for example, does not give EPA the authority to *compel* a state agency to submit a SIP revision or otherwise comply with the Act's requirements.  EPA can only *induce* a state agency into compliance with the threat of sanctions such as the loss of highway funding.  Yet Plaintiffs would have this Court believe that a citizen *can* compel a state agency to submit a SIP revision by using Section 304(a)(1) to obtain injunctive relief.  It defies logic to suggest that Congress intended to give citizens greater powers of enforcement than EPA.  This Court should reject Plaintiffs' interpretation.

A number of other environmental laws have citizen suit provisions with

8

1794889.1

language that is very similar, if not identical, to Section 304(a).  No less than five courts, including the U.S. Supreme Court, have concluded that this language was not intended to authorize a citizen suit against a regulator acting in its regulatory capacity. The Air District is not aware of *any* authority to the contrary.

**I.** **Regulatory and Factual Background.**

**A.** **The Clean Air Act's Regulatory Scheme.**

The Clean Air Act sets forth a "comprehensive national program" for improving air quality throughout the country.  42 U.S.C. §§ 7401 *et seq*.; *Gen. Motors Corp. v. United States*, 496 U.S. 530, 532 (1990).  The program involves a "partnership" between the federal government and the states that has been described as "a uniquely important system of cooperative federalism." *Montana Env't Info. Ctr. v. Thomas*, 902 F.3d 971, 974 (9th Cir. 2018); *Committee for a Better Arvin v. EPA*, 786 F.3d 1169, 1173 (9th Cir. 2015).  Under the Act, the federal government and the states play different but equally vital roles in implementing the Act's requirements.

For its part, EPA sets "National Ambient Air Quality Standards" ("NAAQS") for air pollutants that pose a risk to public health or welfare.  Section 109, 42 U.S.C. § 7409.  Each NAAQS represents the maximum concentration of a pollutant, averaged over a specified period of time, that can safely be present in the ambient air.[1] 40 C.F.R. § 50.1(l).  After setting a NAAQS, EPA determines whether the standard is met within designated "air quality control regions."  Section 107, 42 U.S.C. § 7407(d). EPA then classifies each region as "attainment" or "nonattainment" for each pollutant. *Id*.

For their part, the states have "primary responsibility" for attaining and maintaining the NAAQS within their geographic boundaries.  Section 101, 42 U.S.C. § 7401.  To that end, the states must develop, adopt, and enforce "state implementation plans" ("SIPs").  Section 110, 42 U.S.C. § 7410.  Each state must

---

[1] "Ambient air" is defined as "that portion of the atmosphere, external to buildings, to which the general public has access."  40 C.F.R. § 50.1(e).

1794889.1

WOODRUFF, & SMART
ATTORNEYS AT LAW
COSTA MESA

prepare a SIP, or a revision to an existing SIP, within three years after EPA promulgates or revises[2] a NAAQS.  Section 110, 42 U.S.C. § 7410(a)(1).  Each SIP must set forth enforceable emissions limitations, other control measures, means, or techniques, and timetables for compliance, as may be "necessary or appropriate" to attain and maintain the NAAQS.  Section 110, 42 U.S.C § 7410(a)(2).

States must submit proposed SIPs to EPA for review and approval according to specified criteria.  Section 110, 42 U.S.C. § 7410; Sections 171 through 193, 42 U.S.C. § 7501 *et seq*.; 40 C.F.R. Part 51.  Once approved, a SIP's requirements have the force and effect of federal law.  *El Comite Para el Bienestar de Earlimart v. U.S. E.P.A.,*786 F.3d 688, 692 (9th Cir. 2015); *Safe Air for Everyone v. E.P.A.*, 488 F. 3d 1088, 1091 (9th Cir. 2007).

SIPs prepared for nonattainment regions are subject to a variety of additional requirements.  Sections 171-179B, 42 U.S.C. §§ 7501-7509a.  Importantly, each nonattainment SIP must contain an "attainment demonstration."  42 U.S.C. § 7410(a)(1); 40 C.F.R. § 51.112.  Each attainment demonstration must (1) identify the existing baseline air quality "inventory" of emissions in the region; (2) set forth emissions limits and other control measures that will reduce emissions;[3] and (3) demonstrate that the control measures will make reasonable further progress towards, and ultimately achieve, attainment of the federal and state standards in the region by the required date.  40 C.F.R. §§ 51.112, 51.114; *1000 Friends of Maryland v. Browner*, 265 F.3d 216, 221 (4th Cir. 2001).

The Act gives states a great deal of flexibility in selecting the specific regulations to include in a SIP.  Under the Act, each state "is at liberty to adopt

WOODRUFF, & SMART
ATTORNEYS AT LAW
COSTA MESA

---

[2] EPA may periodically revise a NAAQS based on new information.  40 C.F.R. § 50.2.  When a NAAQS is revised, EPA must classify each region as attainment or nonattainment with the revised standard.  Once a NAAQS has been revised, each state must submit to EPA a revised SIP demonstrating how the state will attain the new standard by the deadline and maintain compliance thereafter.

[3] 42 U.S.C. § 7410(a)(2)(A).

1794889.1

whatever mix of emission limitations it deems best suited to its particular situation" as long as each SIP meets the statutory requirements and is designed to achieve reasonable further progress toward, and ultimately attain, compliance with the NAAQS. *Train v. Natural Res. Def. Council*, 421 U.S. 60, 79 (1975); *see also Montana Sulphur & Chem. Co. v. E.P.A.*, 666 F.3d 1174, 1181 (9th Cir. 2012) quoting *Union Elec. Co. v. E.P.A.*, 427 U.S. 246, 269 (1976) ("Congress plainly left with the States, so long as the national standards were met, the power to determine which sources would be burdened by regulation and to what extent").

### B.   Requirements for Ozone Nonattainment Regions.

Ozone is not emitted directly by stationary sources or motor vehicles.  Rather, ozone is formed by the reaction of nitrogen oxides ("NOx") and volatile organic compounds ("VOCs") in the atmosphere in the presence of sunlight and high temperatures. *Am. Trucking Associations, Inc. v. E.P.A.*, 283 F.3d 355, 359 (D.C. Cir. 2002).  Thus, ozone pollution is controlled by regulation of NOx and VOCs as ozone "precursors."  *See, e.g.*, *Sierra Club v. Env't Prot. Agency*, 21 F.4th 815, 817 (D.C. Cir. 2021); 40 C.F.R. § 51.165(a)(1)(xxxvii)(C).

EPA has promulgated a total of four ozone NAAQS.  Before 1997, the standard was 0.12 parts per million ("ppm") measured over a one-hour period (the "one-hour standard").  In 1997, EPA adopted a new standard of 0.08 ppm measured over an eight-hour period (the "1997 eight-hour standard").  In 2008, EPA reduced the standard to 0.075 ppm measured over eight hours (the "2008 eight-hour standard").  In 2015, EPA reduced the standard further to 0.070 ppm measured over eight hours (the "2015 eight-hour standard").

The Act sets forth specific requirements for ozone nonattainment SIPs. Sections 181-185B, 42 U.S.C. §§ 7511-7511f.  Among other requirements, EPA must classify ozone nonattainment areas based on the extent to which ozone levels exceed the NAAQS.  Section 181, 42 U.S.C. § 7511.  The classifications are "marginal," "moderate," "serious," "severe," and "extreme."  *Id.*  Different control requirements

1794889.1

WOODRUFF, & SMART
ATTORNEYS AT LAW
COSTA MESA

apply in each region depending on the classification.  Generally speaking, relatively more polluted regions have more time to comply but, at the same time, are subject to more stringent control requirements.

Of relevance here, Section 185 provides that each SIP prepared for a severe or extreme ozone nonattainment area must require major stationary sources of VOCs to pay annual fees to the State should the area fail to attain a NAAQS by the applicable deadline.  Section 185, 42 U.S.C. § 7511d.  States with severe or extreme ozone nonattainment regions under the 1990 one-hour standard were required to submit SIP revisions with a Section 185 fee program no later than December 31, 2000.  Section 181(b)(4), 42 U.S.C. § 7511(b)(4); Section 182(d)(3), 42 U.S.C. § 7511a.[4]

The Section 185 fee is $5,000 per ton of VOCs emitted over 80% of the baseline amount, adjusted for inflation since Section 185 was adopted in 1990.  Thus, a major source must reduce emissions 20% below the baseline to avoid paying a fee.  As of 2022, the inflation-adjusted fee rate was $11,152.67 per ton emitted per year.[5]  For many sources, this amounts to a substantial penalty.  Industry groups have long objected to the imposition of Section 185 fees.  They have explained that, because SIPs for severe and extreme nonattainment areas already required the most stringent emissions controls (such as best available emission control technology), the only way to avoid the fees would be to curtail production, which would adversely affect the economy.  *Nat. Res. Def. Council v. E.P.A.*, 643 F.3d 311, 316 (D.C. Cir. 2011).  They also note that the burdensome fees would apply to small businesses, hospitals, and schools.  *Id.*

### C.  Ozone Control in the South Coast Air Basin.

EPA has designated the South Coast Air Basin (the "Basin") as an air quality

---

[4] Even though the one-hour standard was revoked in 2005, the "anti-backsliding" provision applies such that the Section 185 fee program requirement was, and still is, in effect.

[5] Request for Judicial Notice ("RJN"), Ex. E, p. 6.

WOODRUFF, & SMART
ATTORNEYS AT LAW
COSTA MESA

1794889.1

control region under the Act.  40 C.F.R. § 81.305.  The Basin consists of the non-desert portions of Los Angeles, San Bernardino, and Riverside Counties, and all of Orange County.  The California Legislature has delegated to the Air District the State's primary responsibility under the Act for achieving and maintaining the NAAQS within the Basin.  Cal. Health & Safety Code §§ 40001, 40412.  As required by the Act, the Air District prepares the SIP for the Basin,[6] issues permits to construct and operate, and enforces the SIP.

The Basin is currently designated nonattainment for ozone standards.  40 C.F.R. § 81.305.  The South Coast Air Basin has been designated "severe" or "extreme" nonattainment ever since 1990 when the Act was amended to add ozone nonattainment classifications.  *Nat. Res. Def. Council v. U.S. E.P.A.*, 779 F.3d 1119, 1123–24 (9th Cir. 2015).  Achieving the NAAQS in the Basin has proven to be very difficult, for two key reasons.[7]  First, the Basin has a very large population – almost half the population of the state of California lives within its boundaries.  As a result, the Basin contains millions of motor vehicles and stationary sources that generate air pollutants daily.  Second, the combination of the Basin's topography and meteorology is highly conducive to the formation of ozone.  The Basin is surrounded by mountains to the east and the ocean to the west.  In the morning, the winds generally travel from the ocean towards the mountains, carrying NOx and VOCs with it.  The eastern mountains trap the pollutants, containing them in the Basin.  Sunlight heats the ambient air and creates an "inversion layer" – a layer of air hotter than the layer below – that traps the pollutants vertically.  NOx and VOCs react in the sunlight to form

---

[6] The Air District's "air quality management plan" for the South Coast Air Basin, prepared pursuant to Cal. Health & Safety Code §§ 40408 and 40460 *et seq.*, serves as the Basin's SIP under the Clean Air Act.  Cal. Health & Safety Code § 40460.

[7] *Cf.* Cal. Health & Safety Code § 40402 (acknowledging the "critical air pollution problems" in the South Coast Air Basin caused by millions of motor vehicles, stationary sources, atmospheric inversion layers, and large amounts of sunshine); 59 Fed. Reg. 23264-01 (the South Coast Air Basin's "uniquely high" levels of ozone pollution result from "massive emissions" and "especially adverse meteorology and topography").

1794889.1

ozone, which is often trapped in the Basin.  Between the mountains and the inversion layers, the Basin is essentially like a "bowl" with a "lid" that contains air pollutants in the Basin, sometimes for weeks and perhaps even months.

Despite these natural and man-made obstacles, the Air District, working with the California Air Resources Board, has reduced ozone levels dramatically over the last 50 years.  In 1980, for example, there were about 175 days per year in which the (future) federal 1997 eight-hour ozone standard was exceeded at one or more monitoring stations.  By 2018, only about 50 days exceeded the standard, although there was an uptick in 2020.[8]  Days exceeding the 1997 eight-hour ozone standard were concentrated in the Eastern San Bernardino Valley (Redlands).  *Id.*[9]  Moreover, significant progress in reducing air pollution has occurred at the same time as the economy has grown substantially.  Since 1995, maximum one-hour ozone levels have dropped by about 50%, while Gross Domestic Product in the South Coast 4-county region has nearly doubled, and population has grown by about 20%.[10]  *Id.*

The Air District, however, can only do so much to address ozone nonattainment because the problem is largely caused by mobile sources over which the Air District has no regulatory authority.  Ozone levels are driven substantially by NOx levels, and mobile sources, including trucks, ships, locomotives, automobiles, airplanes, and farm and construction equipment, collectively generate over 80% of the NOx pollution in the South Coast Air Basin.[11]  *Id.*

## II.   Section 304(a)(1) Does Not Authorize Suits Against Regulators Acting in Their Regulatory Capacity -- it Only Allows Suits Against *Polluters*.

Plaintiffs' Complaint purports to sue the Air District under the Act's citizen suit provision set forth at Section 304(a)(1), 42 U.S.C. § 7604(a)(1).  Complaint p. 4, ¶ 14;

---

[8] 2022 Air Quality Management Plan ("AQMP"), RJN, Ex. A, p. 1.
[9] 2022 AQMP, RJN, Ex. B, p. 2.
[10] 2022 AQMP, RJN, Ex. D, p. 4.
[11] 2022 AQMP RJN, Ex. C, p. 3.

1794889.1

p. 11, ¶ 61.[12]  According to the Complaint's first (and only) claim for relief, the alleged failure to revise the Air District's SIP to include a Section 185 fee program "constitutes a violation of an emissions standard . . . within the meaning of the CAA's citizen suit provision. 42 U.S.C. § 7604(a)(1)(ii))."  Complaint p. 11, ¶ 61.

Whether a federal statute authorizes a private right of action turns on Congressional intent.  *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 377-78 (1982); *Middlesex Cnty., Sewerage Auth. v. Nat'l Sea Clammers Assn.*, 453 U.S. 1, 13 (1981).  In determining Congressional intent, courts will consider the plain words of the statute and "particularly to the provisions made therein for enforcement and relief."  *Middlesex Cnty.* 453 U.S. at 13; *City & Cnty. of San Francisco v. U.S. Dep't of Transp.*, 796 F.3d 993, 998 (9th Cir. 2015).  Courts will consider "similar provisions within the statute as a whole and the language of related or similar statutes" (*U.S. v. LKAV*, 712 F.3d 436, 440 (9th Cir.2013)) as well as the legislative history, the statutory structure, and "other traditional aids of statutory interpretation."  *Middlesex Cnty.*, 453 U.S. at 13.  "The key to the inquiry is the intent of the Legislature."  *Merrill Lynch*, 456 U.S. at 378.

Here, it is clear that Congress did *not* intend to allow citizen suits under Section 304(a)(1) against a regulatory agency based on the agency's alleged failure to revise a SIP.

## A. A Regulatory Failure to Revise a SIP is Not a "Violation" of the Act Within the Meaning of Section 304(a)(1).

Section 304(a)(1), entitled "Citizen Suits," provides in relevant part as follows:

". . . any person may commence a civil action on his own behalf--

---

[12]In the "Statutory and Legal Framework" section of the Complaint, Plaintiffs reference Section 304(a)(2), 42 U.S.C. § 7604(a)(2).  Complaint, p. 8, ¶ 36.  That section, however, which authorizes a lawsuit against the *EPA administrator* based on an alleged failure to perform a non-discretionary duty, obviously has no relevance here as EPA is not a defendant.

WOODRUFF, & SMART
ATTORNEYS AT LAW
COSTA MESA

1794889.1

(1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency . . . *who is alleged to have violated . . . or to be in violation of* . . . an emission standard or limitation under this chapter . . .” 42 U.S.C § 7604(a)(1) (emphasis added).

In *Sierra Club v. Korleski*, 681 F.3d 342 (6th Cir. 2012) (“*Korleski*”), the Sixth Circuit held that this language was never intended to authorize a citizen suit against a state regulatory agency based on actions taken in its regulatory capacity.[13] In *Korleski*, a provision of the Ohio SIP’s New Source Review (“NSR”) Program required the Ohio EPA to make “best available technology” (“BAT”) determinations before issuing permits to new and modified sources. *Id*. at 344. The Ohio EPA complied with the BAT requirement for decades until the Ohio legislature passed a law allowing the issuance of NSR permits to new and modified “small” emissions sources, as defined, without making BAT determinations. *Id*. Thereafter, the Ohio EPA stopped making BAT determinations, despite the fact that the requirement was still in the SIP. *Id*.

An environmental group sued the Ohio EPA’s administrator under Section 304(a)(1). The Complaint alleged that (1) the SIP’s BAT determination requirement was an “emissions standard or limitation” within the meaning of Section 304(a)(1), and (2) the Ohio EPA “violated” the requirement every time it issued an NSR Permit to a small source without making a BAT determination. *Id*. at 344-45. In defending the case, the Ohio EPA administrator argued that a state agency’s failure to enforce a SIP provision is not a “violation” as that term is used in Section 304(a)(1). The Court in *Korleski* agreed. Based on the “text and structure” of the Act, the Court concluded, it is “plain” that Section 304(a)(1) does not authorize citizen suits “against state

---

[13] The Court acknowledged that a citizen suit will lie against a government agency which *itself* discharges air emissions in violation of a SIP-approved rule. That, of course, is not the case here. The Air District and CARB here are being sued based on an alleged regulatory failure – the alleged failure to revise the SIP to add a Section 185 fee program.

1794889.1

regulators *qua* regulators." *Id.* at 351. Rather, Section 304(a)(1) "is only a means by which 'parties may enforce substantive provisions of the [CAA] against regulated parties.'" *Id.* (quoting *Bennett v. Spear*, 520 U.S. 154, 174 (1997)).[14]   For the reasons set forth below, *Korleski* was well-reasoned, correctly decided, and should be followed here.

     **1.**  <u>**The Act Consistently and Exclusively Uses the Term "Violation" to Refer to Noncompliance by Polluters.**</u>

As the Court explained in *Korleski*, the Act consistently refers to "violations" of a SIP in ways that *clearly* were not intended to apply to regulators acting in their regulatory capacity. *Id*. at 348. Section 113 of the Act, for example, authorizes EPA to assess civil penalties against any person who "has violated" or "is in violation of," any SIP requirement. 42 U.S.C. § 7413(b). EPA can recover civil penalties of up to $25,000 per day for each violation. Under Section 113(c)(1), any "knowing violation" of a SIP requirement is punishable by a criminal fine and/or imprisonment not to exceed five years, or both. 42 U.S.C. § 7413(c)(1). In the event of a second conviction, the maximum fine and the maximum prison term "shall both be doubled." As the Court noted in *Korleski*, it is simply "implausible" to suggest that the Act was intended to authorize civil penalties of $25,000 per day, criminal fines, and five years' imprisonment of a state official based on the official's failure to implement a SIP provision. *Id.* at 349. Clearly, when the Act refers to a "violation" of a SIP, it was intended to mean only noncompliance by a regulated polluter.[15]

Moreover, as the Court in *Korleski* further noted, the Act consistently uses the term "violation" to refer to a polluter's failure to comply with a SIP but *does not* use the term "violation" to refer to noncompliance by a regulatory agency. Section 179,

---

[14] *Korleski* has been followed by other courts. *See, e.g., City of Fairborn, Ohio v. EPA* (S.D. Ohio, Mar. 13, 2023, No. 3:22-CV-102) 2023 WL 2478572.

[15] This Motion does not address whether Section 185 sets forth "emission standards or limitations." The Air District will reserve argument on that issue.

1794889.1

for example, specifies sanctions that EPA may apply to states based on any failure to (1) submit a SIP meeting all requirements, or (2) implement an approved SIP.  42 U.S.C. § 7509.  Either type of failure is described as a "deficiency" rather than a "violation."  As the Court explained in *Korleski*, the use of the term "deficiency" is very significant.  As the Court explained, "in construing a statute, the words matter," and the use of the term "deficiency" instead of "violation" is further confirmation that Congress never intended to allow a citizen suit based on a state's alleged regulatory noncompliance.  *Korleski*, 681 F.3d at 350.

To take another example, in Section 113 of the Act, Congress carefully distinguished between a person's "violation" of a SIP and a "State failure to enforce" a SIP.  Section 113 states in relevant part as follows:  "whenever . . . the Administrator finds that *any person* has violated or is in violation of any requirement or prohibition" of a SIP, the Administrator can "issue an order requiring such person to comply," "issue an administrative penalty," or "bring a civil action." 42 U.S.C. § 7413(a)(1)(A)-(C) (emphasis added).  If, on the other hand, the EPA administrator identifies "a failure of *the State* in which the [SIP] applies to enforce the plan or permit program effectively," the Administrator can to step into the shoes of the State and enforce the SIP.  *Id*. § 7413(a)(2) (emphasis added).  Section 113 clearly distinguishes between a "violation" of a SIP by any person and the "failure of the State . . . to enforce" the SIP.  As the Court explained in *Korleski*, this language is further evidence that an alleged regulatory failure is not a "violation" of the SIP as that term is used throughout the Act.  *Korleski*, 681 F.3d at 350.

Moreover, Section 304 itself clearly distinguishes between "violations" of a SIP and a regulatory failure to enforce or implement a SIP.  As explained above, Section 304(a)(1) authorizes citizen suits against "any person" who has "violated . . . an emission standard or limitation."  Section 304(a)(2), by contrast, authorizes citizen suits against the EPA Administrator "where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not

18

1794889.1

discretionary." 42 U.S.C. § 7604(a)(2). It is significant that Congress expressly authorized suits against the EPA (and *only* the EPA) for failure to fulfill a regulatory duty. Congress could have inserted the "failure to perform any act or duty" language in Section 304(a)(1), or it could have included states in the list of potential defendants in Section 304(a)(2). But Congress did neither. This confirms that Congress did not intend to authorize citizen suits based on an alleged failure to perform a regulatory act or duty. *See Russello v. U.S.*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.")

In reaching its conclusion, the Sixth Circuit in *Korleski* relied on the Supreme Court's decision in *Bennett v. Spear*, 520 U.S. 154 (1997) ("*Bennett*"). *Korleski*, 681 F.3d at 348-49. In *Bennett*, the Supreme Court interpreted language in the citizen suit provision of the Endangered Species Act ("ESA"). This language is "virtually identical"[16] to the language of the Act's citizen suit provision. In *Bennett*, the Supreme Court held that the ESA citizen suit provision can only be used to sue "regulated parties" and cannot be used to challenge the U.S. Fish & Wildlife Service's ("F&WS") "implementation of" the ESA. *Bennett*, 520 U.S. at 173.

In *Bennett*, ranchers and irrigation districts filed a citizen suit under Section 11(g)(1)(A) of the ESA (16 U.S.C. § 1540(g)(1)(A)). *Bennett*, 520 U.S.at 159. The suit alleged that a biological opinion issued by F&WS for two fish species failed to comply with ESA requirements. *Ibid*. The suit also alleged that F&WS' decision to require minimum water levels on two reservoirs implicitly constituted a "critical habitat" determination. Thus, the plaintiffs claimed, F&WS violated the ESA by making a critical habitat determination without considering the resulting economic impacts. *Id*. F&WS argued in *Bennett* that the case should be dismissed because

---

[16] Section 11(g)(1) of the ESA was, in fact, "patterned after" Section 304(a)(1). *Korleski*, 681 F.3d at 346.

1794889.1

WOODRUFF, & SMART
ATTORNEYS AT LAW
COSTA MESA

1   ESA's citizen suit provision does not authorize a suit against FW&S based on action

2   taken in its capacity as administrator of the ESA. *Id*. at 171.

3          The ESA citizen suit provision, set forth in Section 11(g)(1)(A) of the ESA,

4   provides in relevant part as follows:

5          ". . . any person may commence a civil suit on his own behalf--

6          (A) to enjoin any person, including the United States and any other

7          governmental instrumentality or agency (to the extent permitted by

8          the eleventh amendment to the Constitution), who is alleged to be

9          in violation of any provision of this chapter or regulation issued

10         under the authority thereof." 16 U.S.C. § 1540(g)(1)(A).

11  The Supreme Court in *Bennett* considered both the language of Section 11(g)(1) and

12  the larger context of the ESA's provisions. *Id*. at 171-4. The Supreme Court found

13  that the term "violation" as used in Section 11(g)(1) "does not include the Secretary's

14  failure to perform his duties as administrator of the ESA." *Id*. at 173. In support of

15  this conclusion, the Supreme Court noted that the ESA uses the term "violation"

16  elsewhere "in contexts in which it is most unlikely to refer to failure by the Secretary

17  or other federal officers and employees to perform their duties in administering the

18  ESA." *Id*. at 174. The Supreme Court cited, for example, a provision authorizing

19  civil penalties against "[a]ny person who knowingly violates" any ESA provision. 16

20  U.S.C. § 1540(a). The Supreme Court explained that "[w]e know of no precedent for

21  applying such a provision against those who *administer* (as opposed to those who are

22  *regulated by*) a substantive law." *Id*. at 173-74 (emphasis added). The Supreme

23  Court also did not "think it likely" that Congress intended to subject regulators acting

24  as such to *criminal* penalties or *warrantless arrests*, both of which are available for

25  knowing "violations" of the ESA.[17] *Id*. at 174. The Supreme Court concluded that

26  "viewed in the context of the entire statute," Section 11(g)(1)'s reference to any

27

28  ───────────────

    [17] 16 U.S.C. § 1540(b), (e)(3).

WOODRUFF, & SMART
ATTORNEYS AT LAW
COSTA MESA

1   "violation" of the ESA "cannot be interpreted to include the Secretary's

2   maladministration of the ESA."  *Id.*

3      Because the language of the Act's citizen suit is essentially the same as the

4   language of the ESA's citizen suit provision, *even in the absence of Korleski*, the

5   Supreme Court's opinion would be controlling here.

### 2. Plaintiffs' Interpretation is Wholly Inconsistent with the Clean Air Act Sanctions Scheme.

8      Plaintiffs' interpretation of Section 304(a)(1) is plainly wrong for another

9   reason.  As the Court pointed out in *Korleski*, Plaintiffs' interpretation is inconsistent

10  with the Act's sanctions scheme and, for that matter, the very nature of the Act as a

11  model of cooperative federalism.  *Korleski*, 681 F.3d at 350.  Plaintiffs allege that they

12  have the right to *compel* the Air District to submit a SIP revision through injunctive

13  relief.  This claim is simply not credible, given that *even EPA does not have the*

14  *authority to compel a state regulator to submit a SIP revision or implement a SIP*.

15  *See Brown v. EPA*, 521 F.2d 827, 834 (9th Cir. 1975) (no provision in the Clean Air

16  Act "vest[s] in the Administrator power to compel the states to administer and enforce

17  regulations"); *cf. New York v. United States*, 505 U.S. 144, 188 (1992) ("[t]he Federal

18  Government may not compel the States to enact or administer a federal regulatory

19  program").  In fact, EPA options for enforcing a state's compliance with the Act are

20  quite limited.[18]

21     Under Section 179, if a state fails to submit a SIP meeting all requirements, or

22  fails to implement an approved SIP, EPA can withhold federal highway funds from

23  the state and/or require emissions from new and modified sources be offset by a ratio

24  as high as 2 to 1.  42 U.S.C. § 7509.  Simply put, EPA at most can *induce* a state to

25  comply with the Act; it cannot *compel* a state to comply.  *Korleski* 681 F.3d at 350.  It

26  defies logic to suggest that Congress intended to give significantly *more* enforcement

27  _____

28  [18] EPA can, of course, compel *polluters* to comply with a SIP under Section 113.  42
    U.S.C. § 7413(a)(1)(A).

WOODRUFF, & SMART
ATTORNEYS AT LAW
COSTA MESA

21

1   authority to citizens than to the EPA.

2       Plaintiffs' interpretation of Section 304(a)(1) is inconsistent with the Act's

3   sanctions scheme in another way.  Under Section 179(a), EPA cannot impose

4   sanctions against a state for failing to submit a SIP revision until 18 months after EPA

5   has provided notice of the deficiency.  42 U.S.C. § 7509(a).  As the Court noted in

6   *Korleski*, the "obvious" purpose of the 18-month "waiting period" is to encourage

7   EPA and a state to "work out their differences" before sanctions are imposed, in the

8   spirit of cooperative federalism.  *Korleski*, 681 F.3d at 350.  In contrast, under

9   Plaintiffs' interpretation of Section 304(a)(1), Plaintiffs would be entitled to

10  "immediate, compulsory relief" in the form of an injunction requiring compliance.  As

11  the Court noted in *Korleski*, such a result would "make[] nonsense of the more

12  deliberate and cooperative regime set forth in 42 U.S.C. § 7509."

### 3.  Courts Have Followed *Bennett* and/or *Korleski* in Interpreting the Same Language in Other Citizen Suit Provisions.

15      In addition to the Sixth Circuit in *Korleski*, other courts have applied the

16  *Bennett* decision to similar citizen suit provisions.  In *City and County of San

17  Francisco v US Dept of Transportation*, 796 F.3d 993 (9th Cir. 2015) ("*San

18  Francisco*"), for example, the Ninth Circuit interpreted the citizen suit provision set

19  forth in the Natural Gas Pipeline Safety Act (the "Pipeline Safety Act").  In *San

20  Francisco*, a natural gas transmission line ruptured causing deaths, injuries, and

21  widespread property damage.  *Id.* at 995, 997.  The plaintiff filed a citizen suit under

22  Section 1(A) of the Pipeline Safety Act (49 U.S.C. § 60121) against the Pipeline and

23  Hazardous Materials Safety Administration ("Pipeline Safety Administration").  *Id.* at

24  997-98.  The suit alleged that Pipeline Safety Administration violated the Pipeline

25  Safety Act when the Administration found that the California Public Utilities

26  Commission's activities met the Pipeline Safety Act's standards.  *Id.* The Pipeline

27  Safety Act's citizen suit provision provides in relevant part as follows:

28      (a) General authority.--(1) A person may bring a civil action in an

WOODRUFF, & SMART
ATTORNEYS AT LAW
COSTA MESA

22

1 appropriate district court of the United States for an injunction

2 against another person (including the United States Government

3 and other governmental authorities to the extent permitted under

4 the 11th amendment to the Constitution) for a violation of this

5 chapter or a regulation prescribed or order issued under this

6 chapter.  49 U.S.C. § 60121.

7  The Court in *San Francisco* relied on the *Bennett* decision in concluding that

8 Section 1(A) of the Pipeline Safety Act does not authorize citizen suits against the

9 Pipeline Safety Administration acting in its capacity as a regulator.  *San Francisco,*

10 796 F.3d at 999-1000.  The Court noted that the language of the NGPSA's citizen suit

11 provision is "very similar" to the ESA citizen suit provision at issue in *Bennett*.  *Id*. at

12 999.  The Court examined other provisions of the Pipeline Safety Act, including the

13 provisions for civil penalties, and found that the Pipeline Safety Act, like the ESA,

14 "consistently and exclusively" uses the term "violation" to refer to "substantive

15 violations by regulated parties."  *Id.*  at 1000.  Finally, the Court in *San Francisco*

16 explained that the *Korleski* decision, among other cases, supports the conclusion that

17 the term "violation" as used in the Section (A)(1) of the Pipeline Safety Act was

18 intended to apply exclusively to violations of the PHMSA by regulated parties.  *Id.* at

19 1000.  The Court cited the *Korleski* holding with approval.   In light of *Bennett* and

20 *Korleski*, the Court in *San Francisco* concluded as follows:

21  As in the context of the ESA, a "violation" of the Pipeline Safety

22  Act is "most unlikely to refer to failure by the Secretary or other

23  federal officers and employees to perform their duties in

24  administering the [Pipeline Safety Act]." See *Bennett*, 520 U.S. at

25  173, 117 S.Ct. 1154.  *San Francisco*. 796 F.3d 993, 1000.

26  The *San Francisco* and *Bennett* cases are, of course, binding on this Court.

27 Given that they interpreted essentially the same language found in the Act, this Court

28 should confirm that Congress never intended to allow claims under Section 304(a)(1)

23

challenging regulatory action.

Other Circuit Courts have applied *Bennett* and/or *Korelski* to similar citizen suit provisions. *Benzman v. Whitman*, 523 F.3d 119 (2d Cir. 2008), for example, involved a suit against the EPA administrator under the Comprehensive Environmental Response, Compensation, and Liability Act's ("CERCLA") citizen suit provision. The suit alleged that EPA failed to fulfill mandatory post-disaster cleanup and public information duties set forth in CERCLA. *Id*. at 130. CERCLA's citizen suit provision, set forth at Section 310(a)(1), is very similar to the citizen suit provisions set forth in the Act and the ESA. 42 U.S.C. § 9659(a)(1). The Second Circuit applied *Bennett* in ruling that the term "violation" set forth in Section 310(a)(1) of CERCLA did not apply to a regulator's alleged failure to perform a regulatory duty. *Id*. at 133.

In *Askins v. Ohio Dep't of Agriculture*, 809 F.3d 868 (6th Cir. 2016), the Sixth Circuit held that the Clean Water Act citizen suit provision "does not permit citizen suits against regulators." *Id*. at 876. In reaching this conclusion, the court relied on *Korleski* and *Bennett*, noting that the language of the Clean Water Act citizen suit provision is "nearly identical" to the language of the citizen suit provisions in the Clean Air Act and the Endangered Species Act. *Id.* In *Cross Timbers Concerned Citizens v. Saginaw*, 991 F. Supp. 563, 567 (N.D. Tex. 1997), also held that the Clean Water Act citizen suit provision, "substantially similar" to the ESA citizen suit provision in *Bennett,* does not allow claims against regulators based on regulatory activity.

Finally, in *Physicians Comm. for Responsible Medicine v. Johnson*, 436 F.3d 326, 334 (2d Cir. 2006), the Second Circuit cited *Bennett* in holding that the Toxic Substances Control Act ("TSCA") citizen suit provision does not allow claims against regulators based on regulatory activity. This is further support for this Motion, because the language of Section 304(a) and the TSCA citizen suit provision are essentially the same. *Compare* 15 U.S.C. § 2619(a) *with* 42 U.S.C. § 7604(a).

///

WOODRUFF, & SMART
ATTORNEYS AT LAW
COSTA MESA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

WOODRUFF, & SMART
ATTORNEYS AT LAW
COSTA MESA

### B.   Ninth Circuit Case Law Does Not Support Plaintiffs' Interpretation.

One can find decisions in the Ninth Circuit where a plaintiff sued a regulator under Section 304(a)(1) and the court decided the matter on the merits without considering the jurisdictional issue raised in *Bennett* and *Korleski*. *See, e.g.*, *Bayview Hunters Point Community Advocates v. Metropolitan Transportation Commission*, 366 F.3d 692 (9th Cir. 2004) ("*Bayview*"); *McCarthy* v. *Thomas*, 27 F.3d 1363 (9th Cir. 1994) ("*McCarthy*"); *League to Save Lake Tahoe v. Trounday*, 598 F.2d 1164 (9th Cir. 1979) ("*Trounday*").  These cases have no relevance here, however, because the issue presented in this Motion was not raised, addressed, or decided in any of those cases.

### 1.   An Unexamined Assumption in a Decision Does Not Create a Precedent.

It is well established that a case has no precedential value as to an issue that *could* have been raised by a party and decided by the court but was not.  *See, e.g.*, *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.") (internal quotation marks and citation omitted); *Lewis v. Casey*, 518 U.S. 343, 352 n.2 (1996) ("[t]he existence of unaddressed jurisdictional defects has no precedential effect").  A case has precedential value only for those issues that are *actually litigated*. This is true even when a prior holding depends on an implicit, "unexamined" assumption.  *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 118–19 (1993) ("*Harper*").

As the Supreme Court explained in *Harper*, it is a "long-standing rule" of the Court that, if a prior decision does not "squarely address" an issue, the Court in a later case "remains free to address [the issue] on the merits."  *Harper*, 509 U.S. at 118. This rule "can be traced back to some of the earliest of [the Supreme] Court's

decisions" (*Id*.) and is widely cited and applied in federal and state courts.[19]

In *Brecht v. Abrahamson*, 507 U.S. 619 (1993), for example, the U.S. Supreme Court considered the appropriate standard for deciding whether a trial court error was "harmless" in the context of a habeas corpus proceeding.  There were two choices: the "*Chapman*" standard[20] and the "*Kotteakos*" standard.[21]  In support of his argument for the *Chapman* standard, the defendant noted that the Court had previously applied the *Chapman* standard in several habeas corpus proceedings.  *Id*. at 631.  Thus, the defendant argued, the Court was bound by *stare decisis* to apply the *Chapman* standard in his case.  *Id*.  The Court rejected this argument.  The Court noted that, although the Court had *actually* applied the *Chapman* standard in previous habeas corpus cases, in none of those cases did the Court address *whether* the *Chapman* standard *should* be applied in habeas cases.  *Id*.  The Court explained that, in the prior cases, the Court "never squarely addressed the issue," and "at most *assumed* the applicability of the Chapman standard" in habeas corpus proceedings.  *Id*.  (emphasis added).  Thus, the doctrine of *stare decisis* did not apply.  *Id*.  The Ninth Circuit, of course, follows the Supreme Court rule.  *See, e.g.*, *Estate of Magnin v. Comm'r*, 184 F.3d 1074, 1077 (9th Cir. 1999) ("[w]hen a case assumes a point without discussion, the case does not bind future panels"); *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 938 (9th Cir. 2007) ("[w]e are not required to follow what amounts to, at most, an implicit assumption, because '[s]uch unstated assumptions on non-litigated issues

---

[19] *See, e.g.*, *Lum v. City & Cnty. of Honolulu*, 963 F.2d 1167, 1170 n.1 (9th Cir. 1992) (cases which "stumble into decisions on questions neither raised nor discussed by the parties or by the trial court are not treated as authoritative on those unstated assumptions and nonlitigated points"); *People v. McKinnon*, 52 Cal.4th 610, 639 (2011) (in both the U.S. Supreme Court and the California Supreme Court, decisions "are not authority for issues neither considered nor decided therein"); *People v. Knoller*, 41 Cal.4th 139, 154-55 (2007) ("[i]t is axiomatic that language in a judicial opinion is to be understood in accordance with the facts and issues before the court. An opinion is not authority for propositions not considered").

[20] *Chapman v. California,* 386 U.S. 18, 24 (1967) (a trial court error is harmless if, and only if, it is "harmless beyond a reasonable doubt").

[21] *Kotteakos v. United States,* 328 U.S. 750, 776 (1946) (an error is harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict").

WOODRUFF, & SMART
ATTORNEYS AT LAW
COSTA MESA

1   are not precedential holdings binding future decisions.'" *Id*. at 938 (quoting *Sakamoto*

2   *v. Duty Free Shoppers, Ltd*., 764 F.2d 1285, 1288 (9th Cir.1985)).

3       **2.** <u>*San Francisco* **is the Only Ninth Circuit Case that Considered the**</u>

4       <u>**Issue Presented Here.**</u>

5       The issue raised here -- whether Congress intended that Section 304(a)(1) be

6   used to challenge regulatory action or inaction by a state agency acting in its

7   regulatory capacity -- was not addressed in *Bayview*, *McCarthy*, *Trounday*, or any

8   other 9th Circuit case of which the Air District is aware. None of the cases, therefore,

9   establish any precedent to that effect.

10      *Bayview, McCarthy,* and *Trounday* each involved a citizen suit under Section

11  304(a)(1) brought against an air quality regulator acting in its regulatory capacity.  In

12  *Bayview*, the Court rejected the citizen suit because the plaintiff sought to enforce a

13  SIP provision that was merely a "target" rather than a mandatory requirement.

14  *Bayview*, 366 F.3d at 701.  In *McCarthy*, the court held that a city must comply with

15  certain conditionally approved portions of a SIP.  *McCarthy,* 27 F.3d at 1373.  In

16  *Trounday*, the court dismissed a case against a state agency alleging that the agency

17  failed to comply with a SIP.  *Trounday,* 598 F.2d at 1174.

18      *Bayview*, *McCarthy* and *Trounday* have no relevance here because none of

19  them considered the *threshold* issue raised in the Air District's Motion to Dismiss –

20  whether Section 304(a)(1) even *allows* a citizen suit against a regulator acting in its

21  capacity as a regulator.  Each decision, at most, makes the *unexamined assumption*

22  that Section 304(a)(1) can be used to challenge regulatory action.  None of the cases

23  establish any precedent to that effect because the defendants did not raise, and the

24  Courts did not decide, the issue raised in the Air District's Motion to Dismiss.

25  ///

26  ///

27  ///

28  //

WOODRUFF, & SMART
ATTORNEYS AT LAW
COSTA MESA

27

**Conclusion**

      For the reasons set forth above, this Court should dismiss the case for lack of jurisdiction and/or failure to state a claim upon which relief can be granted.

DATED:  October 13, 2023            WOODRUFF & SMART, APC

By: _____
           BRADLEY R. HOGIN
           RICIA R. HAGER
           Attorneys for Defendants SOUTH COAST
           AIR QUALITY MANAGEMENT
           DISTRICT, THE GOVERNING BOARD OF
           THE SOUTH COAST AIR QUALITY
           MANAGEMENT DISTRICT

1794889.1

WOODRUFF & SMART
ATTORNEYS AT LAW
COSTA MESA

**<u>CERTIFICATE OF WORD COUNT</u>**

(Central District Rule of Court, Rule 11-6.2)

The undersigned, counsel of record for South Coast Air Quality Management District, certifies that this motion contains 6965 words, which complies with the word limit of L.R. 11-6.1.

DATED:  October 13, 2023                    WOODRUFF & SMART, APC


By: _____
        BRADLEY R. HOGIN
        RICIA R. HAGER
        Attorneys for Defendants SOUTH COAST
        AIR QUALITY MANAGEMENT
        DISTRICT, THE GOVERNING BOARD OF
        THE SOUTH COAST AIR QUALITY
        MANAGEMENT DISTRICT

WOODRUFF, & SMART
ATTORNEYS AT LAW
COSTA MESA

1794889.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WOODRUFF, & SMART
ATTORNEYS AT LAW
COSTA MESA

# **PROOF OF SERVICE**

## **STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am over the age of 18 and not a party to the within action; I am employed by WOODRUFF, SPRADLIN & SMART in the County of Orange at 555 Anton Boulevard, Suite 1200, Costa Mesa, California 92626-7670.

On October 13, 2023, I served the foregoing document(s) described as **NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**

☐ by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list;

☐ **(BY MAIL)** I placed said envelope(s) for collection and mailing, following ordinary business practices, at the business offices of WOODRUFF, SPRADLIN & SMART, and addressed as shown on the attached service list, for deposit in the United States Postal Service. I am readily familiar with the practice of WOODRUFF, SPRADLIN & SMART for collection and processing correspondence for mailing with the United States Postal Service, and said envelope(s) will be deposited with the United States Postal Service on said date in the ordinary course of business.

☒ **(BY ELECTRONIC MAIL)** by causing the foregoing document(s) to be electronically filed using the Court's Electronic Filing System which constitutes service of the filed document(s) on the individual(s) listed on the attached mailing list.

☐ **(BY OVERNIGHT DELIVERY)** I placed said documents in envelope(s) for collection following ordinary business practices, at the business offices of WOODRUFF, SPRADLIN & SMART, and addressed as shown on the attached service list, for collection and delivery to a courier authorized by _FedEx to receive said documents, with delivery fees provided for. I am readily familiar with the practices of WOODRUFF, SPRADLIN & SMART for collection and processing of documents for overnight delivery, and said envelope(s) will be deposited for receipt by _FedEx on said date in the ordinary course of business.

☐ **(BY FACSIMILE)** I caused the above-referenced document to be transmitted to the interested parties via facsimile transmission to the fax number(s) as stated on the attached service list.

☐ (State)    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒ (Federal)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. I declare under penalty of perjury that the above is true and correct.

Executed on October 13, 2023, at Costa Mesa, California.

*/s/ Katie E. Kane*
KATIE E. KANE

1794889.1

1

2

## <u>SERVICE LIST</u>

### *EAST YARD COMMUNITIES FOR ENVIRONMENTAL JUSTICE ET AL. V.*

### *SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT*

### **CASE NO: 2:23-cv-06682-JLS-SK**

FERNANDO GAYTAN
ADRIANO L. MARTINEZ
Earthjustice
707 Wilshire Blvd., Suite 4300
Los Angeles, CA 90017
fgaytan@earthjustice.org
amartinez@earthjustice.org

Tel: 415-217-2025
Fax: 213-403-4822

SHANA LAZEROW
Communities for a Better Environment
6325 Pacific Blvd. Suite 300
Huntington Park, CA 90255
slazerow@cbecal.org

Tel: 323-826-9771

NIHAL SHRINATH
Sierra Club
2101 Webster St., Ste. 1300
Oakland, California 94612
nihal.shrinath@sierraclub.org

Tel: 415-977-5627

California Air Resources Board
John S. Saskaki
Kristin Krejmas McCarthy
California Department of Justice
Office of the Attorney General
300 South Spring Street

***Attorneys for Plaintiffs***
East Yard Communities for
Environmental Justice and
People's Collective for
Environmental Justice

***Attorneys for Plaintiff***
Communities for a Better
Environment

***Attorneys for Plaintiff***
Sierra Club

***Attorneys for Defendant***
California Air Resources Board

WOODRUFF, & SMART
ATTORNEYS AT LAW
COSTA MESA

1794889.1

1    Los Angeles, CA 9003
2    John.sasaki@doj.ca.gov
3    Kristin.mccarthy@doj.ca.gov

4    Tel:213-269-6335

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WOODRUFF, & SMART
ATTORNEYS AT LAW
COSTA MESA